UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 29, 2006
Decided November 30, 2006

**Before**

Hon. JOEL M. FLAUM, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-4500

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     *Plaintiff-Appellee,* <br><br>     *v.* <br><br> RAYMOND M. WALKER III, <br>     *Defendant-Appellant.* | Appeal from the United States District Court for the Southern District of Indiana, Evansville Division. <br><br> No. 04 CR 36 <br><br> Richard L. Young, *Judge.* |

**O R D E R**

An indictment charged Raymond Walker (and a codefendant, John Jordan) in count 1 with conspiracy to possess cocaine with intent to distribute. The conspiracy ran, according to the indictment, from an unknown date "but at least as early as September, 2004" until December 6, 2004. The overt act portion of the indictment went on to allege that from "approximately June, 2004, up to December 2004, Walker distributed . . . cocaine . . . in the Evansville, Indiana, area." The indictment also included three substantive counts of cocaine distribution (counts 4, 5, and 6), all allegedly committed on December 6, 2004. One of the counts (number 6) was dismissed. A jury found Walker guilty on counts 1, 4, and 5. Because Walker had at least three prior felony convictions (three were listed in an information filed before trial) relating to cocaine, he received a mandatory life term

on count 1.  Concurrent terms of 360 months were imposed on counts 4 and 5. Walker appeals his convictions and the sentence he received.

Walker's indictment grew out of an investigation into drug dealing during the summer and fall of 2004 by police officers in the southwest Indiana area.  As part of that effort, during the summer of 2004, undercover Indiana state police trooper Robert Hornbrook contacted several individuals in Dale, Indiana, in order to set up controlled cocaine purchases.  Hornbrook subsequently purchased cocaine several times from both Doug Lyons and John Jordan.  On September 7, 2004, Hornbrook telephoned Jordan and arranged to purchase 7 grams of crack cocaine.  The two met in Dale and traveled to Evansville to get the cocaine from Jordan's source, Rose McCray.  McCray arrived at the meeting place with Walker.  Hornbrook, through Jordan, purchased the cocaine from McCray.  Several other direct cocaine transactions with McCray followed.  After the completion of a December 6, 2004, transaction with McCray, she was arrested.  She quickly accepted an invitation to cooperate.

McCray, a 20-year-old single mother, explained to officers after her arrest that she was selling cocaine for Walker.  McCray, now acting as an informant, telephoned Walker to set up a cocaine delivery.  Once the meeting was arranged, McCray and the law enforcement officers (including Hornbrook) traveled to Walker's home.  Before McCray met with Walker, she and her car were searched. McCray was also fitted with a hidden transmitter so the officers could listen in as the transaction went down.  McCray was given $275 in marked money to pay for the cocaine.  Before giving her the money, Hornbrook photocopied the bills and noted their serial numbers.

Hidden transmitter and marked bills in place, McCray met with Walker at his residence and gave him the $275.  She received 7 grams of crack cocaine.  After the transaction was complete, officers met with McCray and took the 7 grams of cocaine from her.  Subsequently, other officers arrested Walker as he attempted to drive away from his residence.  He was carrying $2,540 in cash in his pocket. Trooper Hornbrook examined the money and determined that some of it ($250) had the same serial numbers as the currency given to McCray.  Hornbrook returned the money to the Indiana state police so it could be used in other investigations.

Walker's activities also linked him to another undercover Indiana drug investigation.  Beginning in January of 2004, a separate set of federal and local law enforcement officers investigated a group of people suspected of distributing large amounts of cocaine in the Evansville area.  Emmanuel Cabell was caught in that investigation's net.  Law enforcement officers conducted court-approved electronic

surveillance of Cabell's cell phone from April to June of 2004, recording Cabell's calls with various associates about drug distribution activities.

A day after Walker's arrest, while searching his residence, police found a dry cleaning receipt that referred to Walker and contained an Evansville area cell phone number. Phone records indicated that calls from this number were placed to Cabell's cell phone. Several of the calls were recorded during the separate April to June 2004 wiretap investigation. And Walker and Cabell were found, on nine intercepted calls between May 6, 2004, and June 1, 2004, to be discussing cocaine distribution activities.

Walker's first claim on appeal is that the district court erred when it denied his motion to dismiss count 1 of the indictment. He argues that the language of count 1--particularly the "at least as early as September, 2004" reference--failed to adequately apprise him of the essential elements of the charge and thus he was denied a fair opportunity to prepare a defense. On a related point, he says the inclusion of the wiretap evidence--from the Cabell investigation-- amounted to a constructive amendment of the indictment. Both arguments are borderline frivolous.

Of course, an indictment must adequately apprise a defendant of the charge against him so he can prepare his defense. Walker's indictment (on this point he only challenges count 1) clearly did just that. It identified "the Southern District of Indiana, Evansville Division, and elsewhere" as the location of the conspiracy. It identified Walker and Jordan as participants in the conspiracy with "diverse other persons, known and unknown to the Grand Jury." The charge recited the purpose of the conspiracy and provided the relevant statutory citations. Accordingly, count 1 adequately informed Walker of the elements of the conspiracy charge against him.

Walker's main point, in essence, is that the indictment was constructively amended by the evidence submitted at trial. Under a constructive amendment theory, an indictment may not identify one crime and the prosecution prove a different crime at trial. Walker's constructive amendment claim relates to the timing allegations in count 1.

Unless a particular date is an element of the offense, it is generally sufficient to prove that an offense was committed on any day before the indictment and within the statute of limitations. United States v. Spaeni, 60 F.3d 313, 315 (7th Cir. 1995); United States v. Leibowitz, 857 F.2d 373, 378 (7th Cir. 1988). In a drug conspiracy case, of particular importance here, the precise time frame of the conspiracy need not be noted with precision. A certain amount of leeway-- usually utilizing terms like "on or about" is permissible.

Overwhelming evidence of Walker's participation as a mid-level cocaine distributor in the conspiracy was presented to the jury. Testimony from McCray established that in the spring of 2004 Walker recruited her into the conspiracy and became her source for the drug, which she distributed to others until her arrest in December 2004. Recordings of wiretap telephone conversations between Walker and Cabell during May and June 2004 were admitted in which Walker discussed procuring cocaine for distribution and various other matters pertaining to the drug trafficking business.

But Walker contends that the admission of the 2004 wiretap evidence amounted to a constructive amendment of the indictment. He points to the fact that the wiretap evidence was never presented to the grand jury. This, of course, is of no consequence, as the burden of proof at trial frequently requires the presentation of more evidence than was presented to a grand jury. The fact that testimony at trial was not presented to the grand jury does not make an otherwise valid indictment constitutionally infirm. United States v. Johnstone, 856 F.2d 539, 540 (3d Cir. 1988).

Moreover, the telephone evidence did not substitute one criminal offense for another. Nor did it establish an offense different from or in addition to that charged by the grand jury. Rather, the telephone conversations between Walker and Cabell established Walker's active participation in a cocaine distribution business.

Walker points to the timing of the telephone conversations, arguing that their presentation constructively amended the dates of the conspiracy. The recorded conversations, as we noted, occurred between May 6, 2004, and June 1, 2004. Count 1 of the indictment alleges that the conspiracy began "on a date unknown to the Grand Jury, but at least as early as September, 2004," and continued "to and through December 6, 2004." Also as we have noted, the "Overt Acts" portion of the indictment provides that "From approximately June, 2004, up to December 2004, WALKER distributed quantities of cocaine base to Individual 1 in the Evansville, Indiana, area." Inexplicably, Walker ignores the time frame set out in the "Overt Acts." That's not wise. When read in its entirety, the charged conspiracy fully contemplates criminal activity by members of the conspiracy during the time frame of the recorded telephone conversations with Cabell. That's what "at least as early as September, 2004" means. The telephone evidence fits comfortably within the time frame of the indicted conspiracy. It did not constitute a constructive amendment of the charge.

Moreover, a minor difference involving starting dates for a conspiracy has no bearing on the sufficiency of the indictment. Charging that an act occurred on one date and proving that it occurred at a different time is a "classic variance" between

indictment and trial evidence, which does not change the nature of the crime alleged. United States v. Krilich, 159 F.3d 1020, 1027 (7th Cir. 1998). Walker's attempt to split split hairs over the precise day his involvement in the conspiracy got underway does not carry the day.

Finally, the telephone conversation evidence was independently admissible as "other acts" under Federal Rule of Evidence 404(b). As such, the jury could have heard it even if it occurred before the charged conspiracy actually started.

Next, Walker argues that the district court erred when it allowed, over his objection, officer Hornbrook to testify that Walker was carrying $250 of the $275 in marked money from the December 6 transaction with Ms. McCray when he was arrested. Somehow, Walker claims, Hornbrook's testimony that the seized bills had the same serial numbers as the bills given to McCray violated the "best evidence" rule. Nonsense. Why would the government be required to present the actual bills before the jury could consider Hornbrook's testimony? Walker offers no satisfactory answer. The best evidence rule is concerned with the content of a writing. That was not the case here. If the government wanted to prove that McCray gave something to Walker, and that "something" was "The Brothers Karamazov" autographed by Fyodor Mikhailovich Dostoyevsky, could the officer who gave it to McCray not say it was later found with Walker after he and McCray were together? Of course he could. And the book itself would not have to be offered as evidence.

Finally, as the district court properly noted, Walker was free to challenge Hornbrook about the quality of his recollection on cross-examination--how he was able to recall the numbers, how carefully he compared them to the earlier list he made, and so on. It was not an abuse of discretion for the district court to find that Hornbrook's testimony about the serial numbers on the bills was admissible.

Walker's other challenges to his conviction are easily resolved. His taped telephone conversations with Cabell were admissible on any one of a number of bases--"adoptive statements" under Rule 801(d)(2)(B); "other acts" under 404(b); and admissions under 801(d)(2)(A). The district judge did not abuse his discretion in admitting this evidence. In addition, the district judge gave a cautionary instruction regarding the telephone evidence:

> You are instructed that the recorded conversations which
> allegedly occurred between defendant and Emanuel
> Cabell from May 6, 2004 to June 1, 2004 are not to be
> considered by you as evidence of the truth of Mr. Cabell's
> statements. Rather, Mr. Cabell's statements are only to
> be considered by you as providing context of the

> defendant's statements or admissions. The statements or
> admissions made by the defendant may be considered as
> evidence of his verbal acts or as evidence of his state of
> mind.

Nor did the district judge commit prejudicial error in declining to explicitly tell the jury, as Walker requested, that he was "not charged with being in a conspiracy with Emmanuel Cabell." While giving this instruction would have been proper, not giving it was not error. The jury was told what the indictment said and Cabell was not mentioned. And Walker was free to argue, and did in fact argue, that he was not charged with being in a conspiracy with Cabell.

Finally, Walker's argument that the district court, but not the jury, considered his prior convictions is foreclosed by Almendarez-Torres v. United States, 523 U.S. 224, 244 (1998). See also United States v. Cannon, 429 F.3d 1158, 1160-61 (7th Cir. 2005); United States v. Tek Ngo, 406 F.3d 839, 843-44 (7th Cir. 2005).

For these reasons, we AFFIRM the judgment of the district court.